1

```
1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF NEW YORK
2    - - - - - - - - - - - - - - X
     UNITED STATES OF AMERICA,     :   18-CR-00502(FB)
3                                  :
                                   :
4                                  :   United States Courthouse
          -against-                :   Brooklyn, New York
5                                  :
                                   :
6                                  :   May 20, 2022
                                   :   2:30 p.m.
7    JONATHAN DEUTSCH,             :
                                   :
8          Defendant.             :
     - - - - - - - - - - - - - - X
9
         TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
10           BEFORE THE HONORABLE FREDERIC BLOCK
             UNITED STATES SENIOR DISTRICT JUDGE
11

12                     A P P E A R A N C E S:

13   For the Government:        BREON PEACE, ESQ.
                                Acting United States Attorney
14                              Eastern District of New York
                                271 Cadman Plaza East
15                              Brooklyn, New York 11201

16                          BY:  MEGAN FARRELL, ESQ.
                                 Assistant United States Attorney
17
     For the Defendant:        FEDERAL DEFENDERS OF NEW YORK
18                              One Pierrepont Plaza
                                16th Floor
19                              Brooklyn, New York 11201-2776

20                          BY:  KANNAN SUNDARAM, ESQ.
                                 ABRA METZ-DWORKIN, ESQ.
21
     Court Reporter:           DENISE PARISI, RPR, CRR
22                              225 Cadman Plaza East
                                Brooklyn, New York 11201
23                              Telephone: (718) 613-2605
                                E-mail: DeniseParisi72@gmail.com
24
     Proceedings recorded by computerized stenography.  Transcript
25   produced by Computer-aided Transcription.
```

*Proceedings*                                                      2

1        (In open court.)

2        THE COURTROOM DEPUTY:  Criminal cause for a status

3   conference, United States of America versus Jonathan Deutsch.

4        I ask the parties to please state your appearances.

5        MS. FARRELL:  Megan Farrell for the Government.

6        Good afternoon, Your Honor.

7        THE COURT:  Good afternoon.

8        MR. SUNDARAM:  For Mr. Deutsch, Kannan Sundaram,

9   Federal Defenders of New York.  I'm joined by Abra

10  Metz-Dworkin.  She's a lawyer who is recently working with our

11  office from the firm of Kaplan Hecker, along with Nicholas

12  Delehanty, the paralegal assistant.

13       THE COURT:  So you can keep your mask on, if you

14  want, or you can take them off.  It's up to you.  If you're

15  more comfortable with them on or off, I will leave it up to

16  you.  It's hard for me to understand people when they're

17  wearing a mask.

18       Look, I really think, with all due respect, that the

19  time has come when we are going to have to try this case.

20  When I was here last time many months ago when the head of

21  your federal legal defenders program was here, we spoke with

22  Deirdre extensively about the fact that I've been very, very

23  permissive and charitable, and she had, you know, begged me to

24  really let the case get adjourned -- that was some months

25  ago -- because she was very much involved in handling the

*Proceedings*                                                            3

1   Boston Massacre matter; and I said, no, this is -- okay, this

2   is the last time; I can't do it anymore.  You know I hate

3   mandatory sentences.  I make no bones about it.  I don't like

4   the fact that Congress imposes upon the discretion of the

5   third branch of government, and I am writing a decision right

6   now where I actually refer to the first branch appetite for

7   creating mandatory minimum and reducing the third branch to a

8   twig.  So I feel strongly about that, and that doesn't mean I

9   approve or disapprove of any of these types of indictments.

10  It's just that I don't like to feel that the judiciary is

11  being imposed upon and our discretion is being taken away by

12  Congress.

13          Having said that, I really have gone a long way

14  towards allowing Mr. Deutsch to be at liberty for an extensive

15  period of time, and I gave him this opportunity -- I think

16  it's three years now, maybe --

17          MR. SUNDARAM:  Two.  He was released --

18          THE COURT:  The Government appealed.  It was a big

19  deal.  You know, we know all about that.  And I've had

20  adjournments, after adjournments, after adjournments -- I

21  can't count the number of times, maybe five -- and I told

22  Deirdre last time, it's the last one, and I really don't feel

23  comfortable in going back on my word.  I know you have a new

24  attorney, I know you have all sorts of reasons for another

25  adjournment, I'm denying it, so you are going to have to go

1   and deal with this.  I don't like these cases, a lot of judges

2   don't like them, but we have responsibility to discharge our

3   oath of office and this is one of those cases.

4           So we're scheduled for jury selection on May 31st by

5   magistrate --

6           MR. SUNDARAM:  Your Honor, I'm sorry to interrupt.

7   I just need to make a record.

8           THE COURT:  You are going to make a record.

9           MR. SUNDARAM:  Thank you.

10          THE COURT:  I just want to get us straight in the

11  way here.

12          What is it?  May 31st?

13          THE COURTROOM DEPUTY:  May 31st by Magistrate Judge

14  Levy.

15          THE COURT:  Now, I know that you have a request for

16  a suppression hearing, which I will grant you.  Next week we

17  can do that sometime, okay?

18          Now you can make your record.

19          MR. SUNDARAM:  Your Honor, you're correct that there

20  have been a number of adjournments, as the Government pointed

21  out.  Since the initial adjournment -- there's some feedback

22  here -- those have all been initiated by the Court due to the

23  pandemic, so we have not -- we've asked for two prior

24  adjournments back in 2019.

25          The reason for this adjournment request is set forth

*Proceedings*                                                          5

1  in our May 13th letter.  The day before that, I had a

2  conversation with the Government.  Ms. Farrell, had -- they

3  had emailed us and asked us if we were going to be prepared to

4  go forward because they hadn't yet given us the 3500.

5          THE COURT:  Well, I don't understand that.

6          Maybe you ought to flush that out.  Is it true that

7  you have been remiss in discharging your responsibilities?

8          MR. SUNDARAM:  Your Honor, that's not what I'm

9  saying.  I have to clarify.

10          We conferred and then told the Government that we

11  would not be prepared to go forward -- this was last

12  Friday when we filed the letter -- and that was -- and because

13  of that, we told -- the Government wanted us -- wanted to make

14  sure we went forward before we received the 3500, which we

15  understand, because we didn't want to ask them to give us the

16  3500 and then ask for an adjournment because that -- that

17  seemed unfair to the Government.  So we had difficult a

18  choice, but we conferred -- we conferred with Deirdre, who

19  actually wrote the most recent letter, and we told the

20  Government we are not going to be able to go forward because

21  we have to complete our review of the forensic evidence --

22          THE COURT:  You have to what?

23          MR. SUNDARAM:  -- we have not been able to do that,

24  and so that's the reason that the Government didn't give us

25  3500 because we told them that we were going to be asking for

*Proceedings*                                                               6

1    an adjournment, and we understand that it would be unfair for

2    us to get the 3500 and then ask for an adjournment.

3           At this point, we have a little over a week before

4    the trial date, and for reasons that I think Ms. Metz-Dworkin,

5    who has been working on this, can explain further, we are not

6    going to possibly be able to complete the forensic review of

7    those devices --

8           THE COURT:  You are not going to be able to complete

9    what?  You had years to do this.

10          MR. SUNDARAM:  We have.

11          THE COURT:  There's a whole record here of the

12   Government making everything available to you for inspection

13   before.  I don't have the written record in front of me, but I

14   think I have a pretty good recollection of that.  This is

15   brand new stuff you're tossing out here.  You've had every

16   opportunity in the past.  Ms. Farrell can correct me if I'm

17   wrong about this, but I don't understand why now at this late

18   date you're, once again, asking for the same things that were

19   furnished to you before.

20          Ms. Farrell, what do you say?

21          MR. SUNDARAM:  That is our fault; we are not

22   disputing that.

23          THE COURT:  I want to hear from Ms. Farrell.

24          Tell me what the status is.  I want to make sure

25   they get a fair trial.

1          MS. FARRELL:  Your Honor, the evidence has been

2     available since the defendant was indicted.  Federal Defenders

3     came on multiple occasions, even with experts on more than one

4     occasion, to conduct this very review, Your Honor.

5          What's happening right now, supposedly, with the

6     forensic evidence is the same thing that's happening with

7     motions.  There's an ECF filing from 2019 where Federal

8     Defenders says they have no suppression motions; they're not

9     challenging the admission of evidence.  Now they're filing a

10    suppression motion.  They filed the motions in limine.  This

11    Court spent time to consider all of the party's motions in

12    limine.  Now they say they have new ones.

13         Here, Your Honor, with respect to the forensic

14    review, they say that they have a new expert.  But if I can

15    just let the Court know, the evidence that they want to review

16    is the defendant's computer.  It only has several files on it

17    that the Government intends to rely on, and it's rather

18    simple:  When the defendant pretended to be someone else, he

19    sent out pictures of other people.  Those pictures are on the

20    defendant's computer.  It proves that it's the defendant that

21    was committing the crime.  It's very simple; it's not

22    complicated.

23         THE COURT:  Has the computer been inspected before?

24         MS. FARRELL:  Multiple times by the defense.

25         THE COURT:  That's what I recall.  So this would be

*Proceedings*                                                          8

1   yet another inspection of the same computer.

2           MS. FARRELL:  And I would note, Your Honor, that the

3   Government has tried to make it available and repeatedly

4   emailed counsel to invite them to our office on dates to no

5   avail.  There's no response to the emails.  There are

6   countless emails trying to engage about stipulations, trying

7   to engage and come to a consensus about discovery, about

8   review of discovery, and it's like crickets.  And, so, at this

9   point, the Government has gone above and beyond, and the

10  defense has reviewed the evidence over, and over, and over

11  again.  Nothing has changed, Your Honor.

12          THE COURT:  I think the record is clear.

13          Now, look, in fairness, I don't blame the defendant

14  for trying his very best to really put whatever blocks there

15  are in the path of possible conviction and a long time of

16  incarceration, I get it, and I've been very charitable by

17  allowing this to happen.  He's been at liberty, I think, for

18  two years because I allowed that to happen -- and, you know,

19  the Second Circuit had to pass judgment as to whether or not

20  that was a correct determination -- he had an opportunity to

21  be at liberty while we had to deal with the pandemic, the

22  record is pretty clear about that, so it clearly shows that I

23  really have gone the extra mile in trying to give the

24  defendant every possibility to really deal with his problems.

25          And being at liberty for the last two years gave him

*Proceedings*                                                                    9

1    further opportunities to consult with counsel without having

2    to do that in jail -- it was one of the reasons why I did

3    that -- so I am satisfied with the way I feel that I fairly

4    have given the defendant every conceivable opportunity to deal

5    with these issues.  The time must come --

6              THE DEFENDANT:  I'm sorry, Your Honor, I don't mean

7    to interrupt you, but I need a moment to consult with my

8    attorneys, because there are things that I have been talking

9    to them about for two years that have not been addressed in

10   any way.

11             THE COURT:  You will have a chance to talk to your

12   attorney.

13             The time has come, I'm trying to say, where I have

14   an obligation to really have this case --

15             MR. SUNDARAM:  Mr. Deutsch wants us to raise --

16             THE COURT:  He wants to talk to you?

17             MR. SUNDARAM:  He wants us to raise some additional

18   issues --

19             THE COURT:  You can raise them all.  I'm just trying

20   to --

21             MR. SUNDARAM:  -- relating to our request for an

22   adjournment.

23             THE COURT:  Raise them all.  I'm giving you every

24   opportunity, as I have in the past.  You have --

25             THE DEFENDANT:  I understand -- Your Honor, I

1    understand that, but I also understand that my attorneys have

2    not given me ever opportunity to represent me fairly.  In two

3    years that I've been here --

4              THE COURT:  I am going --

5              THE DEFENDANT:  -- my father has done endless

6    research for me so that I can try to present information that

7    helps flesh out the information in this case that the

8    Government claims is the only thing that matters, but there is

9    other information that I have talked to my attorneys about and

10   I -- those requests that my attorneys deal with these issues

11   have gone unanswered for two years, so for the last two years,

12   I have had minimal contact with my attorneys.

13             THE COURT:  Just one second.

14             THE DEFENDANT:  Absolutely minimal contact with

15   them.  They are now working ardently to try to do things that

16   help me.  I'm not asking for a postponement for any reason

17   other than -- their duty -- like you said before, you have a

18   duty to do what is right to both parties.  They have a duty to

19   do what's right by me and so far they have not done that.

20             THE COURT:  All right.  Thank you, Mr. Deutsch.

21             THE DEFENDANT:  The Government claims --

22             THE COURT:  Mr. Deutsch, I hear you.

23             Listen to me.  I have a pretty good idea, based upon

24   my 26 years of experience, what's going to be happening down

25   the road here, okay?  There's going to be ineffective

1    assistance of counsel.  He's going to try to do everything.  I

2    don't blame him.  But your office, now, which has a great

3    reputation, is being criticized in a very severe way that you

4    have not discharged your obligations to render effective

5    assistance of counsel.  You may have to, you know, be held

6    accountable for that.  I will be shocked if that were the

7    case, but this is what Mr. Deutsch says.

8         Do you wish to comment about that now?

9         MR. SUNDARAM:  Your Honor, I do.  We are -- I am --

10    I'm essentially in agreement with this much of what

11    Mr. Deutsch said:  He has been working assiduously, to the

12    extent he can, with his father being able to use the computer,

13    but not he; and, also, he's been able to go -- he has to drive

14    an hour to review discovery at the Middle District of Florida

15    Federal Defenders Office, which took us some time to secure.

16         In the meantime we have not been communicating with

17    him nearly as much as he's entitled to and as much as he

18    deserves, so that --

19         THE COURT:  Are you confessing to rendering

20    ineffective assistance of counsel during the course of this

21    prosecution?  Are you making that admission in court today?

22         MR. SUNDARAM:  Your Honor, we believe that if --

23    that we cannot effectively represent Mr. Deutsch with what's

24    required by the Sixth Amendment if we have to proceed a week

25    from Tuesday.  That's why --

1          THE COURT:  All right.  So, Mr. Sundaram, you

2    understand --

3          MR. SUNDARAM:  -- we are asking for more time so

4    that --

5          THE COURT:  Listen --

6          MR. SUNDARAM:  -- we can effectively represent him.

7          THE COURT:  Just one second.

8          You can see what's going to be happening in the

9    future.

10          Mr. Sundaram, for the public defender, after years

11    of being on this case, after the last few years, giving him

12    the opportunity to meet with his client outside of prison, is

13    confessing to rendering ineffective assistance of counsel.

14          That's a black mark on your office.  You know that.

15          THE COURT:  The case will proceed --

16          MR. SUNDARAM:  Yes.  Our priority --

17          THE COURT:  -- on May 31st.  It will shake out

18    however it shakes out.  I am stunned that your office, the

19    public defender, is telling me in open court today that you

20    have rendered ineffective assistance of counsel.

21          What do you say about that, Ms. Farrell?  I'm

22    prepared to go forward, in any event, unless you feel that I

23    should do otherwise.

24          MS. FARRELL:  Your Honor, I think the standard for

25    ineffective assistance of counsel is very high, especially

*Proceedings*                                                    13

1   when the evidence is as overwhelming as it is in this case,

2   but I would defer to the Court.

3          THE COURT:  The call is yours.  You know what

4   they're going to do.  I will go forward with it, unless you

5   want to give them an adjournment.

6          MS. FARRELL:  Your Honor, the Government is prepared

7   to proceed.

8          THE COURT:  May 31st, jury selection.

9          You have 11 days to go down to Florida to spend the

10  next ten days with your client, do whatever you want to do.

11         Look, I don't want to argue with you.  I don't like

12  these cases, but we are going to go forward, okay?  You have a

13  record.

14         Is there a viable hearing that I have to have next

15  week?  I mean, tell me a little bit about this.  There's a

16  request for a hearing.

17         MS. FARRELL:  Your Honor, it's a frivolous motion,

18  and I would be happy to address the merits now, if you would

19  like.  I also am preparing a written submission.

20         THE COURT:  We'll talk about that, because, you

21  know, I'm willing to put this down for a hearing date next

22  week just to err on the side of caution.

23         MS. FARRELL:  I would note that counsel didn't

24  submit an affidavit, and so I don't believe there's a basis

25  for a hearing, Your Honor.  It can be decided on the papers.

*Proceedings*                                                                14

 1            THE COURT:  You have to submit an affidavit to give

 2    me a basis to have a hearing.

 3            MS. FARRELL:  Which they did not, Your Honor.

 4            THE COURT:  Okay.

 5            MS. FARRELL:  Would you like me to address the

 6    merits of the hearing?

 7            THE COURT:  No, there's no affidavit; it cannot go

 8    forward.

 9            MS. FARRELL:  Your Honor, I think that there is an

10    issue that can be decided on the papers, basically whether or

11    not the items that were seized from the defendant's computer

12    were within the scope of the search warrants that were issued.

13    It's very simple.  The search warrant permitted the Government

14    to seize evidence of violations of 18 United States Code 2251

15    and 2252, which is the production of child pornography, the

16    receipt and the possession of child pornography by locating

17    photos on the defendant's computer that he sent to victims

18    using Facebook.  When he exploited them, the Government

19    developed direct evidence of the perpetrator of those crimes;

20    therefore, the items that were seized are squarely within the

21    attachment and the scope of the search warrant.  There are no

22    deficiencies in the search warrant.  There are actually two

23    search warrants for the computers, Your Honor.  The FBI got

24    the second one in an abundance of caution, both of which

25    clearly permit law enforcement to seize direct evidence of the

*Proceedings*                                                    15

1   crimes charged.

2        THE COURT:  So, Mr. Sundaram, you haven't submitted

3   an affidavit, so you are really not entitled to a hearing, but

4   you can tell me what it is you are concerned about.

5        MR. SUNDARAM:  Your Honor, I'm going to hand it to

6   Ms. Metz-Dworkin to argue the merits, but the reason we didn't

7   submit an affidavit is an affidavit isn't required for this

8   sort of motion.  Our motion is that -- if the Court looks at

9   the search -- based on the search warrant affidavits, the

10  search warrants were overly broad, were not particularized,

11  and the execution of the search was overbroad, and

12  Ms. Metz-Dworkin can respond to what the Government just said

13  on the merits.

14       THE COURT:  So we can deal with this on the papers.

15  We don't need any hearing.

16       Do you want to speak?  Go ahead.

17       MS. METZ-DWORKIN:  Just briefly, Your Honor.

18       It's important to note that the execution of the

19  warrant resulted in the collection of photos from a laptop

20  computer that were not directly tied to the crimes in

21  question.  They were photos of an adult male, who was clothed,

22  and photos of a nude male without -- without a -- no photo of

23  a face, but photos of male genitalia, as well as a separate

24  set of photos of a younger person who was clothed and --

25       THE COURT:  Well, that would be before the jury.

*Proceedings*                                                                16

1   They can look at the photo and determine whether or not it's

2   the same person.

3          MS. METZ-DWORKIN:  But, Your Honor, in executing the

4   warrant, a reasonable officer would not have found those

5   photos to be responsive to the crimes that are charged here

6   which involve, as Ms. Farrell said, production receipt,

7   possession of child pornography.  They're not child

8   pornography; they are photos of an adult male and photos of a

9   young person with clothes on.

10         MS. FARRELL:  I think counsel is confused.

11         THE COURT:  Excuse me.  Don't cross communicate.

12         Are you finished?

13         MS. METZ-DWORKIN:  I'm happy to let Ms. Farrell

14   speak.

15         THE COURT:  No, no, no, no.  She can wait until you

16   finish.  We usually let counsel finish.

17         Anything else you wish to say?  I'm listening to

18   this; I'm getting a feel for it.

19         MS. METZ-DWORKIN:  I think I had made most of the

20   point.

21         THE COURT:  Okay.

22         MR. SUNDARAM:  Your Honor, I'm sorry, the warrant

23   did not authorize the police to seize things that were

24   adult -- for example, adult pornography, it didn't authorize

25   it, that's why they exceeded the scope of the warrant, and

1    that's not something that our client would be able to attest

2    to in terms of an affidavit.  This is not --

3               THE COURT:  I get it.  I get it.  All right.  Let me

4    look at your papers and deal with that issue, okay?

5               I don't know whether you have anything you submitted

6    yet, or you will submit something on that.

7               MS. FARRELL:  Your Honor, I believe you gave me

8    until Wednesday.  I'm furiously working on a response --

9               THE COURT:  I gave you until Wednesday.

10              MS. FARRELL:  -- if I can submit it earlier, I will,

11   Your Honor.

12              THE COURT:  So I will look at all the papers.  Look,

13   if it's defective, it's defective, regardless of what happens;

14   right?  But submit your papers.

15              Do you have papers on that issue as well?  Are you

16   submitting?  I think you have.

17              MS. METZ-DWORKIN:  Yes, we have.

18              MR. SUNDARAM:  We addressed that --

19              THE COURT:  I have your papers, you have Wednesday,

20   and I'm going to have to take a look at that.  But I guess

21   even if I don't make a determination before the trial, the

22   truth of the matter is is that if, in fact, the defense is

23   correct, the trial will not be of any consequence if, in fact,

24   they're correct; right?

25              MS. FARRELL:  Your Honor, they are all exhibits the

*Proceedings*                                                      18

1   Government wishes to admit at trial.  I think that they're

2   critical evidence, hence the motion at this point, so it kind

3   of -- they admit the relevance of the documents as being --

4          THE COURT:  Let me look at your papers on Wednesday,

5   okay?

6          MS. FARRELL:  Okay.

7          THE COURT:  I mean, I have to get on top of this

8   now, okay?

9          Anything else today?

10          MS. FARRELL:  Your Honor, there's just a few

11   housekeeping issues, if that's okay?

12          THE COURT:  Yes.

13          MS. FARRELL:  If possible, I was wondering what

14   courtroom we would be in and what the courtroom setup would be

15   in terms of the positioning of the jury and how we would deal

16   with the various COVID precautions, if the Court --

17          THE COURT:  Mr. Innelli is going to coordinate that

18   with you.

19          THE COURTROOM DEPUTY:  We will be in this courtroom.

20   I plan on putting nine in the jury box and then spreading the

21   rest out, and I requested three alternates.

22          MS. FARRELL:  The Government would submit, if the

23   Court would accept, impanelling six alternates.  I think that

24   given the rise in COVID rates and in my own experience having

25   a trial in the last few months, it's helpful to have

*Proceedings* 19

1  additional alternates.

2       THE COURT:  Mike, maybe we should have four

3  alternates.

4       Magistrate Judge Levy is going to be selecting the

5  jury.  I'm pretty clear that we don't ask the jurors during

6  the selection whether or not they are vaccinated, we don't do

7  that, but I guess afterwards we find out, and then we may have

8  to reposition the jurors based upon the answers to that

9  question; right?  I think that's what we do.

10      MS. FARRELL:  Your Honor, I did a trial in March,

11 and we never asked and never found out.

12      THE COURT:  You what?

13      MS. FARRELL:  I did a trial in March and we asked

14 and never found out.

15      THE COURT:  Judge Levy is not going to ask whether

16 they've been vaccinated, that's clear, because that raises

17 some real constitutional issues, I suspect.

18      After that, you know, it's the question of whether

19 or not -- for the comfort of the jurors whether we should then

20 find out who has or who has not been vaccinated, and then we

21 can, sort of, reconfigure their positioning in the courtroom.

22      I think that's the fair thing to do, don't you?

23      MS. FARRELL:  Your Honor, the Government will defer

24 to the Court.

25      THE COURT:  We will think more about it.

1          MS. FARRELL:  If the Court would like, I can just

2     tell you, the trial I did was five weeks long, and the jurors

3     were -- they didn't raise any issues.  Perhaps they shared

4     that information with each other, but the Government defers to

5     the Court however you --

6          THE COURT:  We will see how it shakes out.

7     Magistrate Judge Levy is very experienced, and he will select

8     a proper jury; I'm confident of that.

9          So that means that the jury selection will

10    presumably be on the 31st of May, and I see no reason why the

11    Government can't go forward the next day with its opening

12    statements, et cetera.

13         MS. FARRELL:  Yes, Your Honor.

14         THE COURT:  You will be prepared to have witnesses.

15    How long do you anticipate the Government's case will be?

16         MS. FARRELL:  If we use a full trial day, Judge, I

17    think about three days.

18         THE COURT:  Okay.  I just want to get a sense of it.

19         Anyway, I will look at your papers --

20         MR. SUNDARAM:  Your Honor, I have a --

21         THE COURT:  What else do you wish to say today to

22    put on the record?  Do you want an opportunity to speak to

23    Mr. Deutsch now?  Maybe we can give you that opportunity, even

24    though he's not here.

25         MR. SUNDARAM:  Yes, I would like to speak to him

*Proceedings*                                                    21

1    before we conclude today.

2              THE COURT:  Why don't you do this.  How can you do

3    that privately?

4              MR. SUNDARAM:  We could reconvene in ten minutes, if

5    that works.

6              THE COURT:  Can you call him from outside where it's

7    a secure place?

8              MR. SUNDARAM:  Yeah, yeah.  We will call him.

9              THE COURT:  Do that and we will we convene in a half

10   hour.  Will that give you enough time to talk to Mr. Deutsch?

11             MR. SUNDARAM:  Yes.

12             THE COURT:  I have a sentencing it -- what time,

13   Mike?

14             THE COURTROOM DEPUTY:  Now.  We are ready, I think.

15             MR. SUNDARAM:  And, Your Honor, I have a scheduling

16   request that we can also take up later, which will be that if

17   the Government's case is only going to take three days -- I

18   think previously they had estimated it was going to take two

19   weeks -- and given that we will now be getting the 3500 now,

20   that doesn't give us that much time, and we still have our

21   forensics review coming next week.  So I would ask if the

22   Court would, instead of making us proceed to opening

23   statements on June 1st, allow us to do that on June 6th.  That

24   would give us a few more days to effectively represent

25   Mr. Deutsch, and the Government's case would still be finished

*Proceedings*                                                    22

1    that week.  In fact --

2              THE COURT:  We will select the jury on Monday.  I

3    mean, I can start the trial on Wednesday, I guess.

4              MS. FARRELL:  I think we are selecting on Tuesday,

5    Judge.  I think the return date is Tuesday.

6              THE COURT:  What?

7              MS. FARRELL:  The return date is a Tuesday.  We are

8    selecting on Tuesday.

9              THE COURT:  It's Tuesday?

10             MS. FARRELL:  Yes, Your Honor.

11             THE COURT:  It's a Tuesday, Mike?

12             THE COURTROOM DEPUTY:  May 31st is a Tuesday.

13             MR. SUNDARAM:  It's because Monday is Memorial Day.

14             THE COURT:  The jury selection will be when?  On

15   June 1st or June 2nd?

16             THE COURTROOM DEPUTY:  Tuesday, May 31st.

17             THE COURT:  Is going to be jury selection.

18             MR. SUNDARAM:  So we are asking for trial on

19   June 6th.

20             THE COURT:  And that's going to be what day?

21   Tuesday?

22             THE COURTROOM DEPUTY:  Tuesday.

23             THE COURT:  We can start the trial the following

24   Monday.  I guess there's no problem with doing that.

25             THE COURTROOM DEPUTY:  The 9th and the 10th.

*Proceedings*                                                    23

1          THE COURT:  That would be June 5th?  Yeah, yeah.

2          THE COURTROOM DEPUTY:  And then we start trial on

3     the 13th.

4          THE COURT:  Wait a second.  I have a scheduling

5     problem myself; I may not be able to accommodate that request.

6     We'll have to start the trial on the 1st.

7          We'll turn over the 3500 material, whatever it is,

8     forthwith; correct?

9          MS. FARRELL:  Yes, Your Honor.  The Government had

10    sent a standard 3500 protective order and was actually

11    prepared to turn over the 3500 early, and it's ready to go.

12         THE COURT:  How extensive is it?

13         MS. FARRELL:  Not at all.

14         THE COURT:  I don't think it is; right?

15         MS. FARRELL:  Not at all.  These are minor victims.

16    They've been interviewed minimally.

17         THE COURT:  We have to start the trial on the 1st,

18    and I can't give you that time because, for personal reasons,

19    I may not be here on the 9th, and I cannot really run the risk

20    of having the trial last beyond that date.

21         Okay.  Anything else today?

22         MS. FARRELL:  Just one other item, Your Honor.

23         There's a variety of business records that the

24    Government intends to admit as evidence.  We've provided

25    certifications to counsel.  And, Your Honor, under the Federal

*Proceedings*                                                    24

1    Rules, they should come in in terms of their authenticity

2    without a records custodian.  I assume the Court doesn't want

3    the Government to call records custodians, but I wanted to

4    flag that for the Court.

5            THE COURT:  Well, you are going to have to tell me.

6    Are we going to have to impose upon people to have them come

7    to court to certify the record or not?  It's your call.

8    Usually there's cooperation when it comes to that.

9            MS. FARRELL:  Yes, Your Honor, but I haven't been

10   able to get a response, and I believe that even without the

11   defendant's consent, they come in under the rules.

12           THE COURT:  I think you've got to let us know

13   whether you are going to consent to that or whether we're

14   going to have to extend the trial by having these people come

15   to testify; and I think, in fairness, the Government is

16   entitled to know that.

17           When do you tell the Government what you plan to do

18   with respect to that?

19           MR. SUNDARAM:  We would like to talk over the

20   weekend.  If we can do that by Tuesday, would that be

21   sufficient?

22           THE COURT:  Is that okay?

23           MR. SUNDARAM:  The 24th.

24           THE COURT:  By next Tuesday, they want to let you

25   know.  Well, today is Friday.

*Proceedings*                                                        25

1          MS. FARRELL:  Okay.  By Tuesday.

2          MR. SUNDARAM:  Your Honor, we also would be

3    requesting if we could have until Tuesday, also, to submit our

4    voir dire requests --

5          THE COURT:  The voir dire requests are going to be

6    before Judge Levy.

7          MR. SUNDARAM:  Yes.  So we can just make that

8    request to Judge Levy.

9          MS. FARRELL:  I would just note we submitted them in

10   2019, Your Honor, and so --

11         MR. SUNDARAM:  We have a questionnaire that we're

12   going to be asking be submitted to the jurors.

13         THE COURT:  You will take that up with Judge Levy

14   next week.

15         Now, Ms. Farrell, they are going to try to do

16   everything in their power.  They have a right to do it.  You

17   are going to have to just accept that.  That's the way it

18   works.  He's looking at serious time, and I don't blame them

19   for throwing everything up against the wall and hopefully

20   something will stick.  It's their right to do that.

21         MS. FARRELL:  Yes, Judge.

22         THE COURT:  You've got to just understand that.

23         MS. FARRELL:  Yes, Judge.

24         THE COURT:  This is serious stuff, and I respect the

25   fact that they are going to try, and I want them to try

1  everything.  That's their obligation.  It doesn't mean I'm

2  going to grant it, but certainly they have the right to try to

3  put in as many stumbling blocks in your path as they can

4  create and think of doing.

5          MR. SUNDARAM:  Your Honor, one of those

6  additional --

7          THE COURT:  -- holding them in contempt of court.

8          MS. FARRELL:  That's why they're so effective,

9  Judge.

10         THE COURT:  Pardon?

11         MS. FARRELL:  That's why they're so effective.

12         MR. SUNDARAM:  Your Honor, one of the additional

13 things we intend to be throwing your way -- and this is in

14 part because it was back in December twenty -- I think --

15 nineteen when we filed our initial motions in limine -- having

16 done further review of the evidence and the law we -- and the

17 chats, we would like to file another motion in limine.

18 Ms. Metz-Dworkin can tell you what it will be, but it will be

19 filed by early next week, and it's to limit some of the

20 evidence that's in the chats.

21         THE COURT:  Just get it all in, if you can, by next

22 Wednesday, because, you know -- we'll do the best we can to

23 process it.

24         MS. FARRELL:  Your Honor, I'm just --

25         THE COURT:  They want to make more motions.  They

*Proceedings*                                                27

1   are going to make a motion every day.  Get ready for it, okay?

2            MS. FARRELL:  Okay, Your Honor.

3            THE COURT:  Do you have any help?

4            MS. FARRELL:  I'm working on it.

5            THE COURT:  Get somebody else in there.

6            MS. FARRELL:  Yes, Judge.

7            THE COURT:  They are going to bring motions every

8   day.  It doesn't mean they are going to be granted, and I may

9   reach a point in time where I say enough is enough.

10           Let's see if you can get somebody to help you,

11  because you have a lot of things to sort out.

12           MS. FARRELL:  I do have a trial partner, Your Honor.

13  She's out of the office right now under the weather, but

14  she'll return soon, I hope.

15           THE COURT:  Do you want to talk to your client and

16  we'll reconvene at four o'clock?

17           MR. SUNDARAM:  Four o'clock, yes, Judge.

18           (Recess taken.)

19           (In open court; second call.)

20           THE COURTROOM DEPUTY:  Criminal cause for a status

21  conference, United States of America versus Jonathan Deutsch.

22           THE COURT:  All right.  So, now, Mr. Sundaram, have

23  you had a chance to speak to Mr. Deutsch?

24           MR. SUNDARAM:  Yes, Your Honor.  And I also spoke to

25  his father, Stu Deutsch, who was also on the phone.

*Proceedings*                                                        28

1          THE COURT:  You spoke to who?

2          MR. SUNDARAM:  His father, Stuart Deutsch.

3          THE COURT:  I'm sorry, I'm having a hard time

4    understanding what you just said.

5          MR. SUNDARAM:  Let me take the mask off.

6          I spoke to Mr. Deutsch, and I also spoke to his

7    father, who was with him --

8          THE COURT:  His father.  Do you want to say anything

9    else on the record today as a result of that conversation?

10          MR. SUNDARAM:  So we went over -- just to renew the

11   bases for our request for adjournment.  It includes not only

12   the lack of communication with Mr. Deutsch over the time he's

13   been out on bond and the -- there's also the fact that his

14   father has been somewhat actively involved in those

15   discussions -- the discussions about his defense -- and

16   especially because his father is the only one who actually can

17   do research, et cetera, because Mr. Deutsch, cannot use the

18   computer, and so it's --

19          THE COURT:  You have 11 days, and maybe then some,

20   and you've had years for Mr. Deutsch to do whatever he wanted

21   to do.

22          MR. SUNDARAM:  Right.  But the problem has been, and

23   that's what I admitted, and we --

24          THE COURT:  What else do you want to put on the

25   record?

1          MR. SUNDARAM:  And, finally, that Stuart Deutsch,

2     the father, also has to make preparations for the house so

3     that he can come here and attend the trial.  Mr. Deutsch's

4     mother has various health problems and mental health problems

5     and he needs somebody to stay with her to make those

6     arrangements and they were both under the belief that there

7     would be an adjournment, and they're not -- he's not going to

8     be able to make those arrangements within this time frame, so

9     that's another reason we are asking for an adjournment.

10          THE COURT:  Well, he'll have to do the best he can.

11          MR. SUNDARAM:  Your Honor, with respect to

12     scheduling, we did note that on the docket it was this Court

13     that ordered the -- any additional voir dire submissions to be

14     filed by today, so we're asking if the Court could extend that

15     to the 25th, which is next Wednesday.  That's just for mostly

16     an addition of voir dire questions --

17          THE COURT:  What I want you to do, since Magistrate

18     Judge Levy is selecting the jury, is direct all of your voir

19     dire issues and all of your jury selection issues to him.

20     Just contact him immediately on Monday, perhaps, right, and

21     tell him whatever you want him to consider, and you can even

22     make an appointment to meet with him if you like.

23          MR. SUNDARAM:  I was just asking if this Court would

24     extend that deadline from today to the 25th because that was

25     set by this Court.

*Proceedings*                                                    30

1          THE COURT:  Whatever you say.  You want to submit

2    those questions to Magistrate Judge Levy on Wednesday is what

3    you're telling me?

4          MR. SUNDARAM:  Correct.

5          THE COURT:  I want you to contact him to make sure

6    that you are coordinating with him since he's selecting the

7    jury.

8          MR. SUNDARAM:  Okay.

9          THE COURT:  So I will extend that to Wednesday, I

10   assume that will be okay, but you contact him to make sure

11   that he's onboard with all of this, okay?

12         MR. SUNDARAM:  Yes.

13         MS. METZ-DWORKIN:  Thank you, Your Honor.

14         THE COURT:  Okay.  Anything else?

15         MR. SUNDARAM:  No.

16         THE COURT:  Okay.  Thank you very much, and I guess

17   we'll see you probably, I guess, June 1st or thereabouts,

18   okay?  All right.

19         MS. FARRELL:  Thank you, Judge.

20         (Matter concluded.)

21                    *    *    *    *    *

22   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.
23

24    /s/ Denise Parisi                    May 21, 2022
     _____    _____
25        DENISE PARISI                        DATE